The opinion of the court was delivered by
DeBlanc, J.
In 1876, Zepherin Baptiste was married to Josephine M. Carderonne. He died in 1878, and — according to the evidence — his wife did not then possess — in her own right — any property, and — up to trial of this case — was absolutely penniless.
*855 He had — before his marriage — in 1873 and 1875 — borrowed, from Margaret Sabalot, six hundred and fifty dollars, and secured — by a conventional mortgage — the re-imbursement of said sum. The property thus mortgaged was, after his death, sold • to satisfy Mrs. Sabalot’s claim against him, and Mrs. Zepherin Baptiste contends that — out of the proceeds of that sale — she should be allowed, by preference, the amount allowed by law to widows in necessitous circumstances.
Her demand, which was granted by the lower court, is contested by the mortgage creditor, on the grounds:
1: “ That she is not in destitute circumstances.” That fact was-fully established and stands uncontradicted.
2: “That she was the concubine of Baptiste.” She had been his-concubine, but became his wife eighteen months before he died ; and, as-held by ourselves, could not — on account of the irregularity of her ante-nuptial life — be deprived of the bounty which she seeks to obtain.
29 A. 412.
3: “ That the celebration of her marriage with Baptiste was not preceded by the license which the law requires.” Were it so, the law relied upon is merely directory to those who are empowered to celebrate marriages, and its non-observance can not — of itself — affect their validity, when — as in this case — they are otherwise duly solemnized and contracted.
C. C. 104, 111 (113); 6 L. 470 ; 20 A. 97 ; 3 L. 33 ; 2 A. 944 ; 7 A. 253.
4: “ That when the pretended marriage took place, Baptiste was sick, out of his mind, and the ceremony was performed without his knowledge or consent.” He was sick, but got well, and until his death continued to cohabit with Josephine M. Carderonne, freely and without constraint; and — under these circumstances — neither he, if alive, his wife, or any third party, could successfully urge — on this ground — the nullity of their marriage.
C. O. 110 (112); 111 (113).
5: “That plaintiff’s mortgage was given by the deceased before his maniage, and to procure money which he used to pay the taxes due on the hypothecated property.” The homestead law was in force when that mortgage was granted, and it is not alone the debtor’s obligation, but it is also the creditor’s right which must be measured by that law, and we are bound to presume that — -when she made the loan — Mrs. Sabalot knew what risks she was incurring. Whether she did or did not know, her right is inferior in rank to that of the widow.
27 A. 276 ; 29 A. 412 ; 1 R. 86.
It matters not that the borrowed money was used to satisfy taxes levied on the mortgaged property. Mrs. Sabalot was not subrogated to the privilege securing the payment of those taxes; and, though they *856 may have been paid out of the funds borrowed from her, that privilege is now extinguished, and can not be revived, added to the mortgage, or give it a retroactive effect.
In “ Lear vs. Heffner, etc.,” the right to the homestead was disputed on the ground that the creditor’s judgment was for money furnished to pay the price of the property, and this court said: “ The fact that the money loaned was used in paying the instalments of the price, did not make the loan the price. The lender was not the vendee, nor were her rights derived from the vendor, in whose favor the law makes the invoked exception ; and her construction of the law would give to •a debt, which — from its nature — is not secured by any privilege, a superiority over all privileges and mortgages. This is not admissible.”
28 A. 829.
As to the predicted effects of a decree confirming that of the lower court, we can but say that our mission is not to create, but to enforce rights, regardless of what may or may not be the result of the enforcement.
It is — therefore—ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.